May it please the court, Joe Seguenza for petitioner. The issue in this immigration appeal is whether substantial evidence supports the IJ's adverse credibility finding, where the IJ relied primarily on notes taken by the asylum officer at an asylum office interview to supposedly impeach petitioner's testimony in court as to how and the manner in which he obtained his passport to travel. Petitioner submits that the adverse credibility finding is not supported by substantial evidence for two reasons. Number one, the IJ erred in admitting the asylum officer's notes without adequate foundation, authentication and the fact that the asylum officer was unavailable for cross-examination. Secondly, the IJ erred in giving undue excessive weight to those notes in impeaching petitioner and finding him adversely credible overall, even though the crux of the adverse credibility ruling was not supported. Why couldn't the IJ – this was an administrative – this is an administrative hearing. Yes.  And it has to comport with due process. But why – these were notes. They were fairly detailed notes that had specific questions and specific answers. They're all laid out. I think it had the asylum officer's signature, if I'm not – if I remember correctly. I believe so, yes. And there were some preliminary questions in there or some preliminary statements in there and even had, if I remember correctly, it even had Mr. Singh's signature. Yes. And he understood the admonitions. Yes. Correct? Yes. Now, that's significantly different than the circumstances in Singh, the other Singh case, where we were dealing – the panel was dealing with simply the decision by the IJ – by the asylum officer to refer the matter to the immigration court. Yes. This is really – this is significantly different. And in the Singh case, Judge Berzon says, well, if they had done this and they had done that and if we had this and that, it might be okay. And that seems to be this – you know, the concerns that Judge Berzon pointed out in Singh seem to be satisfied here. I would submit, Your Honor, that in that particular case, it is distinguishable from the instant case, and I believe the IJ had referenced that in her decision. The assessment to refer is – was considered by the IJ as to be generally less reliable, less indicia of reliability than asylum officer's notes. Granted, here the asylum officer's notes were typewritten and that there appeared to be adequate admonitions at the beginning of the interview, but because the IJ used those asylum officer notes as a springboard or stepping stone, if you will, to finding that the Petitioner was overall incredible with respect to how and when he entered the country and his asylum claim, and because the asylum officer was unavailable for cross-examination, we would submit that due process was not comported with. She – even though she, in her prefatory comments, stated that because the AO was unavailable for cross, she would give limited weight to these notes, but in the end at AR-58, for instance, she stated that she gave significant weight to the notes because presumably she gave the Respondent an opportunity to explain his inconsistent testimony about the manner in which he obtained the passport. However, the AO notes appeared to be very detailed and the Petitioner could not rebut what was supposedly said at the AO's – at the asylum office. We would submit that she erred in that respect because the Petitioner throughout the course of his testimony, even though it wasn't crystalline testimony, admittedly, when he was confronted with what he said to the AO, either said, I was nervous, I don't remember. Primarily he said, I don't remember whether or not I said such and such to the AO. And the IJ impermissibly discounted that. And at a couple of points during the hearing, she admonished him. She basically said, for instance, at AR-167, if you don't start being straight with me, she would essentially use the AO notes against him as to the manner in which he obtained his passport. And at AR-160, she also admonished the Petitioner, I don't remember, quote, I don't remember doesn't tell me anything. So it appears that the IJ impermissibly used the AO notes without the asylum officer being available for cross-examination and without adequate foundation and authentication satisfied to find the Petitioner overall incredible. And it's significant to note that the IJ herself said that if we didn't have this problem with the passport testimony, given what he testified to as to his asylum claim, he may have minor inconsistencies in his testimony with respect to his exact claim, but I would definitely, I would generally give him the benefit of the doubt. But because his testimony was not crystalline as to how he obtained his passport, she used that to impeach his entire testimony, which we think was improper. Well, I mean, he didn't have any passport documents. He had nothing with him. So she started there, didn't she? She did. Where are they? I don't have them. Well, you know, how did you get them? And he couldn't testify consistently about that. And he said, whose name were they in? What number was on the passport? Where did you make a copy of it? Yes. No, I didn't make a copy of it. I mean, the entire testimony, not just using the notes, was found by the judge to be inconsistent and unbelievable. And it bled over, then, that lack of candor that she found, bled over into the asylum questions as well, isn't that?  Yes, Your Honor, I would. Unfortunately, his testimony, as I said, was not crystalline as the passport issue, but we would submit secondarily. If this Court found, finds that the admission of the AO notes was proper, we would submit that how he obtained his passport in that testimony regarding how he obtained his passport does not prove or disprove whether or not the Petitioner suffered past persecution or whether he has a well-founded fear of persecution. It doesn't go to the heart of the claim. And because this is a pre-Real ID Act case, we believe that that is a significant point. In my remaining time to reserve time for rebuttal, I would wish to point out that it's entirely possible that someone could forget details about, quote, insignificant events in their lives, namely how they obtained a passport, but can be very detailed and have better recollection as to significant events in their lives, birthdays, weddings, deaths in the family, or how they were persecuted in their home country. I don't remember. Did the I.J. make an alternative ruling here? She did not. Assuming that he's credible, I find that the evidence is insufficient. No, we would submit that a remand would be necessary in that regard for her to make those findings. Again, it's entirely plausible that one can offer differing recollections at differing times about insignificant events in their lives, how he obtained a passport, but be very detailed and consistent and plausible as to his actual claim for asylum. Okay. Well, you've got two minutes for rebuttal. Thank you. We'll hear from the government. Thank you. May it please the Court. Jonathan Robbins here on behalf of Eric Holder, the Respondent. As an initial matter, there's no jurisdiction for this Court to review the asylum application because it was found to fall under that one-year time bar. Now, your colleague seemed to disagree with you. Well, respectfully. What do you make of that? Well, I did want to address. Does he have a consistent position? Well, first of all, in my case, it's factually distinguishable because in the notice to appear, there's no allegation as to a specific date of entry. Well, I asked him beyond the notice to appear. Right. I mean, I tried to engage him in this issue. Well, with respect to this theory of things washing over into the asylum application, I don't think that's that they do wash over for a couple of weeks. Well, for a couple of reasons. First, under the statute itself, the statute specifically sets forth what particular circumstances would bring the consideration of that time bar back within the jurisdiction of the Court. And those are questions of law or constitutional questions, not any washing over of credibility. In fact, I believe under the regulation, all asylum applications are considered to be withholding of removal applications. So if a credibility determination were to wash over every time a withholding of removal claim was considered, then that would effectively nullify the time bar completely. I don't think that's what the purpose of the time bar would be. Well, maybe it's that our obligation – I mean, suppose we were to say, conclude that the adverse credibility decision is not supported by substantial evidence as to withholding. There's no alternative decision. And there's a ruling based on that adverse credibility decision on the one-year time bar rule. Wouldn't we just send the whole thing back to the BIA and say, you might want to take another look at your one-year time bar ruling? Well, I would say that the Court has prohibited it. A friendly little, you know, not an order, but, you know, hey, in fairness, take another look. Well, again, I would respectfully argue that the Court has prohibited from doing that under the language of the statute. Now, if it were to go back for simply something solely such as withholding of removal and not asylum because the Court wouldn't have jurisdiction over it, that's certainly an argument that the petitioner could make before the immigration judge, saying the adverse credibility was wrong here, and I guess sort of get the I don't know exactly how it would work. I haven't figured it out yet either. But let me ask you this. There's another little issue in this case. Yes. Which is there's an argument that I.J.'s application of the Singh decision on the assessment to refer case, that he misapplied. The argument is he misapplied that case. So that's a legal issue. So why don't we have jurisdiction to review that legal ruling in the context of the asylum application? Because under the Real ID Act, it restored our jurisdiction to review questions of law and constitutional questions. And even here, there's also a claim that there was a violation of due process. Well. In admitting that, those notes. Well, as far as bringing it back within the jurisdiction, I mean, I think those are the kind of, at heart, it's a factual dispute over whether or not his testimony is correct. And, again, that's something that's specifically barred by the statute. Side arguments as to whether or not something was a solid foundation as to adverse credibility is, it is technically a legal argument when you're arguing that a case applies or a case doesn't, but at its heart, that's a tangential issue on whether or not the actual facts are in dispute or whether they should properly be in dispute. And, again, because the facts with respect to the testimony are a purely factual dispute, there's no basis for the Court to assert jurisdiction over the untimeliness of the application. And with respect to this particular case as it relates to the assessment to refer, even if the Court were to assert that there were jurisdiction, again, as Your Honor has noted in your questioning with my colleague, this is easily distinguishable from the Court's case in the 2005 case in Singh v. against Gonzalez. Because, as Your Honor has noted, this isn't, we're not dealing with an assessment to refer here, which is essentially an asylum officer's opinion. What we have here is the verbatim transcript of his actual interview. As Your Honor has noted, it was signed by both the asylum officer and Petitioner. The Petitioner laid a foundation for it during the merits hearing because he was asked, did you say these things, and he testified as to, he didn't challenge the reliability. And, ultimately, that's what the concern for the Court is. If you're going to base an adverse credibility finding on something like this, is it reliable? And, certainly, the verbatim transcript of his testimony is far more reliable than an assessment to refer or anything in the like. To the extent that this case is also different, even though the asylum officer wasn't available to, for cross-examination, the government did actually attempt to try and get him for cross-examination, which wasn't the case in the Singh case from 2005. So if we conclude that he probably admitted these asylum notes. I'm sorry, what? There's no issue here with respect to admission of the asylum officer's notes. Well, there shouldn't be, no. Okay. Let's just assume there isn't for a moment. Okay. So is there substantial evidence otherwise to support the adverse credibility determination still? Nonetheless? I mean. With respect to the notes. Well, I mean, considering the notes, I'm curious whether you think. So one of the big things that the I.J. focused on was the discrepancies regarding the passport and all of that. That may have had significant play with respect to the one-year time bar issue, but when you get to the merits of his asylum claim, the reason why he was seeking asylum, you know, it's somewhat, to use your word, it's somewhat tangential. Well. To use our language, it doesn't go to the heart of his claim. Well, Your Honor, respectfully, I would say that while there are certainly minor inconsistencies, and the immigration judge did say, look, these are minor inconsistencies which I would normally give the benefit of doubt, but first of all, there was a cumulative effect of the minor inconsistencies. Also, there were inconsistencies which do go to the heart of the claim. For example, there was the testimony with respect to the persecution that he faced when he was detained and allegedly beaten. That does go to the heart of the claim as to whether or not he was being persecuted. So that does go to the heart of the claim, even though the immigration judge did admit, well, this is a minor inconsistency in his testimony. But again, remember, there's no presumption of credibility in these cases. And when an immigration judge is faced, as the immigration judge was here, with showing a willingness to give false information to the government, they begin to look at the case skeptically. And then, for example, they take a look at the affidavits that are submitted by Petitioner. And the immigration judge noted, well, two of these affidavits, which are written by the same person, which are written by two different people months apart, have the exact same language in them. And as the cumulative effect of all these discrepancies and inconsistencies does factor in as to whether or not an adverse credibility determination can be made. You can always nitpick at a specific inconsistency and say, well, this is trivial or that's trivial. But it has to be adjudicated in the context of the entirety of what the alien is presenting to the immigration judge. And, you know, as Your Honor noted, specifically with respect to the passport, it's just all over the place. And it's not that it's not. Kennedy. Does it rise to a level of, for say, the Coor v. Gonzalez case where they found that dishonesty abounded and that the testimony of the passport, this was an exception to the general rule that the credibility determination had to be made on the asylum issues and not on the one-year bar issue, and you had to separately look at them pre-real I.D.? Well, I believe Coor is post-real I.D., if I'm not mistaken. I think it's, again, I have no question. It wouldn't apply. Right. But certainly, again, and it's not even so much the problems with the passport. It's the specific areas in which he faced problems. On direct examination, when he was only required to testify as to the specific details in his declaration, there weren't any problems.  He said on direct testimony there were no problems. It's when he was faced with conflicting evidence, confronted with contradictory evidence on cross-examination. That's when all of a sudden he became much more hesitant. His answers started to contradict themselves. He started asked to have questions repeated over and over. There's also a demeanor finding in this in which the immigration judge specifically notes, look, I was essentially dealing with two aliens here, one on direct examination and one when he was confronted with all this contradictory evidence. Cross-examination is not a fun experience. Well, it's not, Your Honor. But, again, it is indicative, certainly. I mean, if you look at the specific testimony with respect to the passport itself and this is important because he came in on foot from Vancouver. So establishing the one year here is very important because there's no way to know if this person was just setting forth a false asylum application and just reentering the country. I mean, there's no way to know. This is something that the immigration judge has to establish and that the alien has to establish through his burden of proof. And first he said, well, you know, the agent made the passport for me. And then they said, well, wait a minute. He said, your wife, you called your wife for a copy. And he says, oh, yeah, that's right. I applied for it with the Indian government. And they said, well, we're going to. We recognize his testimony was all over the place on his passport. Right. I mean, that's significant. I mean, an immigration judge has to determine whether or not somebody is being credible. And when the first thing you see. His story about the underlying claim for asylum, you know, pretty much stuck together. Well. And the I.J. sort of. Not completely. He said, you know, these other little minor inconsistencies probably aren't enough. I wouldn't, you know. Well, the. It wouldn't have been for all this other stuff. I might have. I got the impression she might not have held it against him and found him credible. Respectfully, Your Honor, for an alien to say, well, I was lying with respect to this, but the rest of my claim is truthful. You've got to go up to the immigration judge and show that you're willing to be honest on the stand and be honest. People get to come to this country in many different ways. And they do anything to come. They'll lie through their teeth to get here. There's no question about it. But that doesn't mean. You know, they come other ways, you know. Look, I'm not. I'm not criticizing anybody's desire to come into the country, but that doesn't mean we excuse not being credible or not being truthful on the stand. And again, under this Court's standard of review, the record of the question that this Court must ask is, is the only way the immigration judge could have come out in this case is that he was telling the truth. Okay. And given the fact that he. Oh, I'm sorry. I'm out of time. No, that's okay. I understand your argument. We understand your argument. Thank you very much for your time, Your Honors. Okay. You have two minutes for rebuttal. Thank you briefly. Two things to note here. In the I.J.'s decision, the I.J. considered four affidavits that Petitioner presented in support of his claim for asylum and related relief. It's significant to note that the I.J. felt comfortable enough to discount those affidavits given his passport testimony and because of the fact that the authors of the affidavits were, quote, not available for cross-examination. However, she found she felt comfortable enough to admit the AO notes, even though the officer was not available for cross-examination. We would submit that indicia reliability is not met here because it has not been established by foundational means whether or not that was a memorialization of the entire interview or whether the asylum officer, in fact, may be misstated the Petitioner's answers to him during the interview. So with respect to due process, we believe that there is sufficient jurisdiction here for the Court if needed to remand to the lower court. Secondly, it's undisputed that in his asylum application, he states, Petitioner states that he entered the country, I believe, on June 10th, 2004, if my recollection serves me correctly, and he entered without inspection in Blaine, Washington. That was not challenged during the hearing. And he gave three different stories about how he entered. One is he walked across. One is he came in a Jeep and one he came in a black sedan. Couldn't he figure out how he got into the country? Well, Your Honor, whether or not he was confused or nervous or you got to be pretty nervous to think of three different stories to get into the to get across the border without being frisked for Cuban cigars. Granted, Your Honor, however, I believe that the central issue is the fact that he did state a date certain when he entered and how he entered without inspection, and we believe that was not challenged at the hearing and that he has met the 1-year bar, the 1-year timely, timely, excuse me, the 1-year asylum filing requirement. And if there are no further questions. No, sir. Thank you. Okay. Thank you. Thank you. That Sing v. Holder is submitted.
judges: O'grady, Goodwin, Paez